**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Vardan Gukasian,

      Plaintiff

v.

Markwayne Mullin,[1] et al.,

      Defendants

Case No.: 2:25-cv-01697-JAD-DJA

**Order Denying Habeas Petition and Motion for Temporary Restraining Order**

[ECF Nos. 1, 51]

Vardan Gukasian, a citizen of Armenia and Russia, has been in immigration custody under the direction of Immigration and Customs Enforcement at the Henderson Detention Center since February 2025. He was ordered removed to Armenia or, in the alternative, to Russia, on October 3, 2025, and his administrative appeal of that order remains pending. As relevant here, Gukasian seeks habeas relief under 28 U.S.C. § 2241, contending that his prolonged detention without bond while his removal proceedings are pending violates his Fifth Amendment due-process rights. I previously denied Gukasian's September 2025 motion for a temporary restraining order (TRO) on that claim, finding that the bond hearings and other procedural protections he received under 8 U.S.C. § 1226(a)—the statutory authority under which he is detained—were likely to satisfy due process.

On March 30, 2026, Gukasian filed a second motion for a TRO directing his release from immigration custody. He contends that the calculus has changed since his first motion because he has now been detained for more than 14 months, an immigration judge denied his request for a custody redetermination, and he has offered to self deport to Russia (which stands ready to

---

[1] Markwayne Mullin has replaced respondent Kristi Noem as the United States Secretary of Homeland Security, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

accept him), but the government has insisted on deporting him to Armenia instead.  He contends that this change nullifies the government's asserted interests in enforcing its immigration laws and removing noncitizens from its borders because it has been presented with a removal alternative but refuses to act on it.

I deny Gukasian's TRO motion.  His due-process claim is governed by the three-factor *Mathews v. Elridge*[2] test to determine if the process afforded to him protects his constitutionally protected interests.  Though Gukasian's interest in freedom from detention is undeniably strong, he has not shown that the bond-determination process under § 1226(a) risks an erroneous deprivation of his rights.  And Gukasian has not shown that his interest in self-deporting to Russia trumps the government's interest in removing him to Armenia when his removal proceedings have concluded.  In short, Gukasian seeks an order finding the government's interest in removing him to Armenia is subservient to his interest in being removed to Russia, and it is not this court's place to make that call.  So I deny his motion and, because the same analysis precludes habeas relief, I deny his habeas petition.  This case proceeds only on Gukasian's separate constitutional claims related to the conditions of his confinement.

## Background

Vardan Gukasian is a native of the former Soviet Union, and he later became a citizen of both Armenia and Russia.[3]  He alleges that he is the founder and leader of the Armenian Democratic Party, a "populist anti-corruption political party in Armenia," and that he has gained popularity among citizens in that country.[4]  Gukasian asserts that his political views have "stirred

---

[2] *Mathews v. Elridge*, 424 U.S. 319 (1976).

[3] ECF No. 1 at ¶ 23.

[4] *Id.* at ¶ 4.

the ire of powerful political foes" in Armenia, eventually leading to his imprisonment on "fabricated" charges.[5] He left Armenia after he was released from prison and moved to Russia, where he remained politically active and eventually drew criticism from Russian security officials.[6] In February 2022, Gukasian came to the United States on a temporary traveler's visa.[7] He overstayed that visa and, on February 20, 2025, he was detained by Immigration and Customs Enforcement (ICE) officials and is being held in custody at the Henderson Detention Center (HDC).[8] Gukasian was placed in removal proceedings under 8 U.S.C. § 1229a, and he has been kept in detention while those proceedings are pending under § 1226(a).

**A.    Gukasian's requests for bond under § 1226(a) have been consistently denied.**

Section 1226(a) permits a noncitizen being held while a removal decision is pending to be detained or released on bond and with conditions.[9] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[10] Gukasian received that initial custody determination, and release on bond was denied.

---

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶¶ 43–44.

[7] ECF No. 11-2.

[8] ECF Nos. 11-2, 11-3.

[9] 8 U.S.C. § 1226(a)(1)–(2).

[10] 8 C.F.R. § 236.1(c)(8).

Consistent with § 1226(a)'s implementing regulations, Gukasian then requested a bond hearing before an immigration judge (IJ) to contest his initial custody determination.[11]  He withdrew his request twice because he wished to submit additional evidence, and the hearing on his redetermination was eventually held on March 17, 2025.[12]  Gukasian was represented by counsel at that hearing.[13]  The IJ denied Gukasian's request, finding that he was a danger to the community based on his convictions in Armenia.[14]  Gukasian appealed that finding to the Board of Immigration Appeals (BIA), and his appeal was denied on September 19, 2025.[15]

On March 16, 2026, Gukasian filed a request for bond redetermination.  The regulations permit a redetermination hearing if the detainee experiences a material change in circumstances.[16]  Gukasian argued that his deteriorating health and the allegedly subpar conditions at HDC warranted his release.[17]  Three days later, an IJ denied that request without a hearing.[18]  The IJ considered Gukasian's medical conditions and the treatment he's received at HDC, ultimately concluding that "the evidence does not establish that [his] condition has materially worsened since the prior custody determination" and that "the record does not

---

[11] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[12] *See* ECF No. 11-5.

[13] *Id.*

[14] *Id.*

[15] ECF No. 11-6.

[16] 8 C.F.R. § 1003.19(e).

[17] ECF No. 51-8.

[18] ECF No. 51-9.

demonstrate [that Gukasian] is being denied adequate medical care while in detention."[19]

Gukasian has a right to appeal that determination,[20] but it's unknown whether he has done so.

**B.      Gukasian was ordered removed to Armenia or Russia, and his appeal of that order remains pending.**

When Gukasian was arrested in February 2025, he was placed in removal proceedings under § 1229a. His removal hearing happened over three nonconsecutive days, during which Gukasian presented extensive evidence to support his asylum claim.[21] On October 2, 2025, the IJ denied Gukasian's applications for asylum and protection under the United Nations Convention Against Torture and ordered him removed to Armenia or, in the alternative, to Russia.[22] Gukasian appealed that decision to the BIA, where it remains pending.

**C.      Gukasian is able to self-deport to Russia, but the government insists on removing him to Armenia.**

In December 2025, Gukasian made an offer to drop his habeas case and his BIA appeal if the government would agree to remove him to Russia instead of Armenia.[23] The government rejected his offer, stating that "removal to Armenia is consistent with the [IJ's removal] order" and removal to that country remains the government's priority.[24] The Russian embassy then reached out to the United States, informing the appropriate officials that Russia stood ready to

---

[19] *Id.*

[20] *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19).

[21] ECF No. 1 at ¶ 82.

[22] ECF No. 33-1.

[23] ECF No. 51 at 10.

[24] ECF No. 51-1 at ¶ 15 (decl. of Daniel Natal, Gukasian's counsel).

5

help facilitate the return of its citizen.[25]  An American official responded that "there [wa]s nothing prohibiting [Gukasian's] removal to Russia" once his removal proceedings were final.[26] Gukasian again returned to the respondents, who reaffirmed that "after consulting with the relevant stakeholders within [the Department of Homeland Security (DHS)], . . . it remains [their] priority to effectuate [] Gukasian's removal to Armenia."[27]

Nevertheless, Russia remains eager to facilitate Gukasian's removal to Russia.  Several flights to Moscow have been booked, then cancelled as Gukasian remains detained, and the Head of the Consular Division of the Embassy of the Russian Federation filed an affidavit confirming that the country stands "willing and ready to accept Mr. Gukasian should he be released from immigration detention in the United States."[28]  And Gukasian represents that he has "identified a private security firm" that he plans to hire "to supervise his departure from the United States" to Russia if and when he is released from custody.[29]  He also alleges that "recent developments in Armenian electoral politics further underscore the urgency of this matter," contending that he is a candidate for Armenia's parliamentary elections taking place in June 2026.[30]  He argues that his detention is interfering with his ability to run an effective campaign.[31]

---

[25] ECF No. 51-3 at 3.

[26] *Id.* at 2.

[27] ECF No. 51-1 at ¶ 18.

[28] ECF No. 59-2 at ¶ 3; *see also* ECF No. 61 (Gukasian's supplement to his TRO motion, explaining that his scheduled flights passed while he remained in custody, but Russian representatives remaining willing to facilitate his return if he is released).

[29] ECF No. 62 at 2.

[30] *Id.* at 3.

[31] *Id.*

**Discussion**

**A.    This court has jurisdiction over Gukasian's due-process claim.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[32]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[33]

The government sees it differently.  It argues that this court is without jurisdiction to consider Gukasian's case because 8 U.S.C. § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[34] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[35]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention,[36] and "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[37]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[38] that bars challenges only to the three discrete actions enumerated in the statute.[39]  To the extent that

---

[32] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[33] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[34] 8 U.S.C. § 1252(g).

[35] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

[36] *See Zadvydas*, 533 U.S. at 687.

[37] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[38] *Id.* at 996.

[39] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

Gukasian merely seeks release from prolonged detention while in removal proceedings, his challenge does not involve the review of the government's decision to commence proceedings or execute his removal order.[40]  So § 1252(g)'s jurisdictional bar is not implicated by the relief he seeks.

The government's § 1252(b)(9) argument fares no better.  Section 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[41] Gukasian's due-process challenge does not challenge DHS's decision to seek removal, nor does it ask this court to review the order of removal.  So this court retains jurisdiction under § 2241 to consider his claim.

**B.    Gukasian's due-process claim doesn't entitle him to habeas relief.**

As relevant here, Gukasian's habeas claim asserts that his prolonged detention under § 1226(a) violates his due-process rights.[42]  His claim and the relief he seeks has shifted as his immigration proceedings have progressed and his factual circumstances have changed.  Gukasian initially sought release but, after I found that the circumstances of his detention likely didn't warrant that relief,[43] he requested a bond hearing before an IJ that requires the IJ to consider his

---

[40] Though Gukasian's claim itself does not invoke § 1252(g), some of his arguments might.  I address those arguments *infra* at pp. 13–15.

[41] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

[42] ECF No. 1 at ¶¶ 129–136.

[43] *See* ECF No. 32 (minute order memorializing the oral denial of Gukasian's TRO motion).

8

health and confinement conditions as bond factors and places the burden on the government to prove that he is a danger or flight risk.[44]

In his new TRO motion, Gukasian again requests release.[45] He contends that three updates to his case warrant that relief. First, as this case remains pending the length of his detention has exceeded 14 months, making his liberty interest weightier than it was at this case's inception. Second, Gukasian requested a bond redetermination, but that request was denied—which, according to Gukasian, shows that § 1226(a)'s procedures do not prevent the erroneous deprivation of his rights. And third, the government has rejected Gukasian's bona fide request for self-deportation to Russia, which calls into question the government's interest in removing him.

### 1. Procedural due-process claims are governed by the <u>Mathews v. Elridge</u> test.

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[46] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[47] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge* to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[48] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*,

---

[44] ECF No. 36 at 12.

[45] ECF No. 51.

[46] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[47] *Id.* at 1206.

[48] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[49]

### 2. *Gukasian's liberty interest is substantial.*

"An individual's private interest in freedom from prolonged detention is unquestionably substantial."[50] Gukasian has been detained for more than 14 months. Under Ninth Circuit precedent, that's considered "prolonged."[51] But when evaluating Gukasian's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[52] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[53]

Gukasian has received the full panoply of procedural protections statutorily due to him under § 1226(a). He has challenged his bond determination several times. And since October 2025, Gukasian's detention has been extended because of his decision to appeal his removal order to the BIA. Gukasian contends that, because he offered to voluntarily dismiss his appeal if the government agrees to remove him to Russia, the government's refusal to grant that request redistributes the blame for the length of his detention onto the government.[54] But Gukasian has

---

[49] *Mathews*, 424 U.S. at 335 (cleaned up).

[50] *Rodriguez Diaz*, 53 F.4th at 1207.

[51] *Id.* (finding 14 months of detention to be prolonged).

[52] *Id.* at 1208.

[53] *Id.*

[54] ECF No. 51 at 18.

failed to point to any statutory authority or precedential reasoning supporting his belief that the government is required to honor a citizen's request to self-deport or else risk violating his due-process rights.[55]  The statute governing removal detention prohibits the government from initiating removal efforts until the date the order of removal becomes administratively final, which has not occurred if a BIA appeal remains pending.[56]  Regardless of the reasoning behind the government's disinterest in removing Gukasian to Russia, it is hamstringed from removing him to any country while he maintains his appeal.  So, although Gukasian's liberty interest is no doubt substantial, the length of his detention is due at least in part to his own actions.  I thus find this factor to weigh only slightly in Gukasian's favor.

### 3. *Gukasian has not shown that there is a risk of erroneous deprivation of his rights under § 1226(a)'s procedures.*

The second *Mathews* factor considers "the risk of an erroneous deprivation of [Gukasian's] interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards."[57]  Gukasian does not dispute that he has been afforded all of the procedural avenues to contest his bond determination under § 1226(a).  He received an initial bond determination, had a hearing on bond redetermination, appealed the outcome of that hearing, and sought further redetermination on the basis of changed circumstances.[58]  Gukasian

---

[55] While 8 U.S.C. § 1231(b)(2)(A) permits a noncitizen to designate his country of removal during the hearing phase of removal proceedings, Gukasian did not do so.  *See* ECF No. 51-2 at 3.

[56] 8 U.S.C. § 1231(a)(1)(B)(i); *Johnson v. Guzman*, 594 U.S. 523, 534–35 (2021) (explaining that "administratively final" refers to "the agency's review proceedings, separate and apart from any judicial review proceedings that may occur in court" and clarifying that, "once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the [noncitizen] unless a court issues a stay" (original emphasis omitted)).

[57] *Mathews*, 424 U.S. at 335.

[58] *See supra* at pp. 3–4.

instead contends that the denial of his changed-circumstances redetermination request demonstrates "a fundamental defect in the procedural framework governing [his] detention."[59] He asserts that, "[i]f a fourteen-month period of detention combined with life-threatening medical conditions is deemed irrelevant to release, then the process cannot reliably protect against unconstitutionally prolonged detention."[60]

Gukasian misrepresents the IJ's determination and misunderstands the court's limited role in reviewing those determinations.  First, the IJ did not deem his medical conditions to be "irrelevant" to his release.  The IJ considered Gukasian's medical records and the care he received while detained and determined that he had not demonstrated that his condition had deteriorated so drastically that it constituted a materially changed circumstance or that the medical care he received was inadequate to manage his conditions.[61]  Put plainly, the IJ considered the merits of Gukasian's concerns and found them inadequate.

Gukasian's argument that the IJ's denial of his request shows a procedural due-process violation mirrors the petitioner's rejected argument in *Rodriguez Diaz v. Garland*.[62]  In his attempt to show that § 1226(a)'s procedures were constitutionally insufficient, Rodriguez Diaz argued that "the IJ's denial of his requests for bond 'show[] that the procedures in place *did* result in the erroneous deprivation of [his] private liberty interest.'"[63]  The Ninth Circuit panel

---

[59] ECF No. 51 at 19.

[60] *Id.*

[61] *See* ECF No. 51-9.

[62] *Rodriguez Diaz*, 53 F.4th at 1212–13.

[63] *Id.* at 1212.

rejected that reasoning, explaining that "this is merely a disagreement with the merits of the IJ's decision, which we lack jurisdiction to review."[64]

The same is true in this case. Section 1226(e) places DHS's discretionary judgment on bond determinations beyond the court's review, stating that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[65] But that is effectively what Gukasian asks this court to do: he takes issue with the outcome of the IJ's determination, but that determination is not reviewable by this court, which may determine only whether the procedures themselves protect Gukasian's due-process rights, not whether the outcome of that process was correct.[66] As the Ninth Circuit put it in *Ching v. Mayorkas*, "[i]t is the process that the procedural due process right protects, not the outcome."[67]

Nor does the length of time that Gukasian has been in detention necessarily warrant more process than he has already received. The *Rodriguez Diaz* court rejected that argument too, finding that "'duration alone' cannot 'sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations.'"[68] Though

---

[64] *Id.* at 1212–13.

[65] 8 U.S.C. § 1226(e).

[66] *See Rodriguez Diaz*, 53 F.4th at 1213 ("That different procedures can produce different results does not prove that the procedures governing the IJ's earlier denial of bond violated due process or that the IJ's earlier decision was in error.").

[67] *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013).

[68] *Rodriguez Diaz*, 53 F.4th at 1212 (quoting *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018), then citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 10 (9th Cir. 2008) (denying habeas relief to a noncitizen detained for three years under § 1226(a), reasoning that that lack of a "certain end date . . . does not render his detention *indefinite* in the sense the Supreme Court found constitutionally deficient in" *Zadvydas*, 533 U.S. 678, which interpreted detention authority under 8 U.S.C. § 1231)).

Gukasian's detention is certainly prolonged, Gukasian has not shown that the procedures available to challenge his detention are inadequate to prevent the risk of erroneous deprivation of those rights.  So this factor weighs in favor of the government.

> **4.      *The government's interest in removing noncitizens is a serious one, and this court lacks jurisdiction to meddle into the government's decision to seek Gukasian's removal to Armenia instead of Russia.***

It is undisputed that the government has a strong interest in enforcing immigration law, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[69]  Gukasian argues that the government's interest in securing his removal has evaporated in light of the fact that Gukasian has offered to self-deport to Russia, but the government refused and insists on prioritizing his return to Armenia instead.  Gukasian contends that no government interest supports that choice.

Gukasian's argument suffers from several fatal flaws.  First, the government's interest in removing Gukasian doesn't disappear merely because he has offered to deport himself to Russia.  While Gukasian's BIA appeal is pending, the government does not have legal authority to remove him, and it remains in its interests to detain him until his removal can occur.  Gukasian fails to point to any case or statutory provision giving noncitizens the right to self-deport while their removal proceedings are pending.  Nor does he cite to any cases in which courts have concluded that the government's interest in removal to the primary country on a noncitizen's removal order isn't significant because the noncitizen could be removed to a less recalcitrant country.[70]  The Supreme Court in *Jama v. Immigration & Customs Enforcement* held that the

---

[69] *Id.* at 1208.

[70] It doesn't appear as though Armenia would not accept Gukasian once his removal proceedings have concluded.  Indeed, Gukasian alleges that Armenia affirmatively seeks his extradition.  *See* ECF No. 1 at ¶ 8.  The fact that Gukasian does not want to be removed there is a subject within the sole purview of the immigration courts and the federal court of appeals.

14

government's discretion in removal proceedings "allows the Attorney General to take both practical and geopolitical concerns into account when selecting a destination country."[71] Gukasian has not shown that the government's interest in selecting a destination country isn't significant.

Second, and more importantly, Gukasian's attack on the government's interest in his removal to Armenia asks this court to improperly meddle into DHS's removal decisions. By telling this court that the government has no interest in his removal *to Armenia*, Gukasian essentially asks this court to weigh in on the propriety of the removal order designating that country for removal. This court does not have jurisdiction to second-guess the IJ's country designation—that authority lies solely with the immigration authorities and can be challenged only through a petition for review to the federal court of appeals. The immigration court has heard Gukasian's requests for asylum and withholding of removal and determined that Gukasian may be removed to Armenia. This court does not have jurisdiction to determine whether the immigration court should have instead given preference for removal to Russia.[72] At this point in the proceedings, ordering Gukasian's release from custody would require me to find the government's interest in removal to Armenia insignificant because an alternative country is available. That step teeters dangerously close to falling into an area over which immigration officials have exclusive control.

---

[71] *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 344 (2005) (interpreting 8 U.S.C. § 1231); *see also Ibarra-Perez* 154 F.4th at 995 (noting that "[t]he IJ's designation [of a removal country] is subject to judicial review through the petition-for-review process" before the courts of appeal).

[72] 8 U.S.C. § 1252(g) (depriving federal courts of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders").

I thus conclude that Gukasian hasn't shown that the government interest in his removal doesn't merit any weight.  Immigration authorities have an interest in enforcing this country's immigration laws, and their choice to pursue removal to Armenia through statutorily proscribed procedures cannot be so cavalierly ignored.  So I find that, while the government's interest in removal may be weakened by its choice to forego an available option, its interests in abiding by the terms of the removal order and not acting on removal while Gukasian's appeal is pending must be given significant weight.[73]

On balance, I find that the procedures provided to Gukasian through his detention thus far satisfy the Fifth Amendment's due-process clause under the *Mathews* test.  So I deny Gukasian's motion for a temporary restraining order and, for the same reasons, I deny his habeas petition.  Gukasian has not shown that he is entitled to any relief on the basis of his detention at this time.  So only his revived conditions-of-confinement claims remain.

## Conclusion

IT IS THEREFORE ORDERED that Vardan Gukasian's petition for a writ a habeas corpus and his motion for a temporary restraining order **[ECF Nos. 1, 51] are DENIED**.

This case proceeds on Gukasian's conditions-of-confinement claims only.

_____
U.S. District Judge Jennifer A. Dorsey
May 11, 2026

---

[73] The government also points out that self-deportation at this stage in the proceedings is typically governed by 8 C.F.R. § 241.7.  That regulation grants authority to "a district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs" to permit a noncitizen ordered removed "to depart at his or her own expense to a destination of his or her own choice."  The fact that § 241.7 grants discretionary authority to specific DHS officials to permit self-deportation supports the finding that this court does not have the jurisdiction to second-guess the decision not to apply that discretion here.